## JOHNSON v. HAMPTON. (No. 2989.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 20, 1924.)

**1. Landlord and tenant ⟷290(1)—Relationship of landlord and tenant, essential to forcible detainer action.**

Unless relationship of landlord and tenant exists, as required by Vernon's Sayles' Ann. Civ. St. 1914, art 3940, action of forcible detainer cannot be maintained, and a judgment therein against defendant was unauthorized.

**2. Landlord and tenant ⟷290(1)—Promise of claimant of homestead to vacate on sale by administrator held not to create relation of landlord and tenant.**

Promise to administrator without consideration to vacate premises claimed by promisor as homestead when property was sold *held* not to make her a tenant of the administrator or the purchaser from him, under Vernon's Sayles' Ann. Civ. St. 1914, art. 3472.

**3. Landlord and tenant ⟷238—Title cannot be tried in action for forcible detainer.**

Title cannot be determined in action for forcible detainer.

Appeal from District Court, Morris County; R. T. Wilkinson, Judge.

Forcible detainer action by J. M. Hampton against Palina Johnson. Judgment for plaintiff, and defendant appeals. Reversed and remanded, with instructions.

The appeal is from a judgment of a district court obtained by appellee in a forcible detainer suit commenced by him against appellant in a justice court. In his complaint appellee alleged that the land in question belonged to the estates of Grant and Angelina Collins, both deceased, and was conveyed to him as the purchaser at a sale thereof made by the administrator of said estates. He alleged that appellant "came into possession of the land by lawful title, being the heir of Grant and Angelina Collins," but at the time he commenced his suit she was "without any title at all," and was holding the land as "his tenant at sufferance." In her answer, after excepting to the complaint on the ground that the allegation therein that she was "a tenant at sufferance" of appellee was a mere conclusion, and that it did not otherwise appear in said complaint that the relation of landlord

and tenant existed between her and appellee, appellant denied that such relation existed between them, and alleged the facts to be that she was the daughter of said Grant and Angelina Collins; that the land belonged to Angelina Collins "in her own right," and for many years had been her and her husband's homestead; that—

"along in 1918 Angelina, the mother of this defendant, died while this defendant was living on said land as a component member of Grant and Angelina Collins' family; that after the death of her mother defendant continued to live on said land as a member of the remaining family with her father, Grant Collins; that in 1919 Grant Collins died; that the defendant has ever since said time lived on said land, she being an unmarried daughter of Grant Collins, and that she held the same as her homestead; that at no time has she agreed to become the tenant of J. M. Hampton or any other person; that she lived on the said place after the death of her parents, and claimed same as exempt from the debts of both Angelina Collins and Grant Collins, and acquired the title as heir of her said parents, they dying intestate; that at all times defendant has held the land she has disputed, and now disputes the title of plaintiff, and holds same against any claims of plaintiff; that at no time has she removed from said land or ceased to make it her home since she went to live with her parents in 1917 or thereabouts."

Only two witnesses testified at the trial, which was before the court without a jury. One of the two was J. R. Hampton, who said he was the administrator of the estates of Grant and Angelina Collins. He testified that appellant was living on the land at the time he qualified as administrator and at the time he, as administrator, sold it in 1922. Appellant was married, he said, but he did not know her husband. "At the time I procured the right to sell the place," the witness said, "I talked to Paline Johnson about selling it. I told her she could stay on the place until I sold it, and she agreed to that. She was staying there on the place by an agreement with me to get off when the place was sold. The agreement was like this: I just told her I was administrator of the estate and that I was going to sell it, and I told her that she could stay there until it was sold. She did agree to get off when the place was sold."

On his cross-examination the witness testified that he sold the land "to pay off some claims that were against the old man," and, further, he "did not know that the land was deeded to the old lady Angelina." Appellant was the other one of the two witnesses. She testified that her mother died in March, 1918, and her father in March, 1919. She said she went to live with her father and mother because they were in bad health and needed her "I helped them to work around the place there and make a living," she said.

"I worked the land on the place. Ever since Father died I have lived there on the place. I never did agree with J. M. Hampton or J. R. Hampton to let them have that place. I have never relinquished that place or moved off of it. I am living on the place now (May, 1924)."

She testified further that she had been married, but that her "husband got a divorce"; when she did not know. "We have been separated about four years," she said. "He got a divorce after we separated. I think he got a divorce before my father died. I claim the place as a homestead."

Lloyd E. Price and J. C. Heard, both of Daingerfield, for appellant.

W. E. Newland, of Naples, and Henderson & Bolin, of Daingerfield, for appellee.

WILLSON, C. J. (after stating the facts as above). [1-3] Appellant insists that the judgment was unauthorized because, she says, it was not shown that the relation of landlord and tenant existed between her and appellee. The contention is on the view that, unless such relation existed, appellee was not entitled to maintain an action for forcible detainer And that is the meaning of the statute as we understand it. Article 3940, Vernon's Statutes; Francis v. Holmes, 54 Tex. Civ. App. 608, 118 S. W. 881 Gulledge v. White, 73 Tex. 498, 11 S. W. 527. Looking to the testimony referred to and that set out in the statement above (and there was none other relevant to the question), it is plain, we think, that it was not shown that appellant was appellee's tenant. The only testimony controverting that of appellant that she never agreed to become appellee's tenant, but, on the contrary, claimed the land as her homestead (Anderson v. McGee, 61 Tex. Civ. App. 274, 130 S. W. 1040), was that of J. R. Hampton that appellant agreed to get off of the land when he, as administrator, sold it. We do not think such an agreement on her part, if she made it. created the relation of landlord and tenant between her and J. R. Hampton as administrator; and, if it did not, of course it did not as between her and appellee. Assuming that the administrator, if he had a right to possession of the land, could pass the right to appellee without a consideration to the estates he represented, which is doubtful (article 3472, Vernon's Statutes), certainly if the land was appellant's homestead, she was not bound by the promise to appellee to abandon it, in the absence, as was the case, of a consideration for such promise. It clearly appears from the record, we think, that the issue between the parties, as in the Francis-Holmes Case, cited above, was "necessarily one of title," and could not be determined in an action for forcible detainer. Therefore the judgment will be reversed and the cause will be remanded to the district court, with instructions to dismiss it.